Filed 2/5/16  P. v. Hall CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Amador)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C077037 |
| v. | (Super. Ct. No. 13CR21087) |
| DALE GLEN HALL, | |
| Defendant and Appellant. | |

Appointed counsel for defendant Dale Glen Hall asked this court to review the record to determine whether there are any arguable issues on appeal.  (*People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).)  After reviewing the entire record, we order a correction to the abstract and affirm the judgment.

FACTUAL AND PROCEDURAL SUMMARY

On August 28, 2013, at around 9:00 a.m., Amador County Deputy Sheriff Jeffrey Bellotti received a call from dispatch to be on the lookout for a possible drunk driver. The dispatcher reported the driver had been refused alcohol at the Deer Ridge Inn in

1

Pioneer and was traveling westbound in a gold Mazda sedan. The dispatcher also relayed the Mazda's license plate number.

About 20 to 25 minutes later, Deputy Bellotti found a car matching the description parked in a supermarket parking lot. As Deputy Bellotti pulled next to the Mazda, a man entered the car and drove off. Deputy Bellotti followed the Mazda. The car was driving around the speed limit but was weaving within its lane. The Mazda crossed double yellow lines as it turned left from Highway 88 to Meadow Drive, about a mile from the parking lot. There was a break in the yellow lines at the intersection where the Mazda turned left.

Deputy Bellotti initiated a traffic stop about 500 yards down Meadow Drive. He contacted the driver, defendant, who had bloodshot and watery eyes, slurred speech, and smelled of alcohol. Defendant admitted he had been drinking for about five straight days, not stopping until 3:00 that morning. His blood-alcohol level later tested at 0.29 percent.

Defendant pleaded guilty to driving under the influence of alcohol (Veh. Code, § 23152, subd. (a)),[1] driving with a blood-alcohol level of 0.08 percent or more (§ 23152, subd. (b)), and driving with a suspended license (§ 14601.2, subd. (a)). He admitted four prior driving under the influence convictions within the last 10 years (§§ 23550, 23550.5) and violating his mandatory supervision in cases No. 12CR20059 and 12CR20058. The trial court sentenced defendant to serve an eight-month state prison term, consecutive to a four year eight month term imposed in two prior cases, ordered various fines and fees, and awarded 1,688 days of presentence credit (638 actual, 638 conduct, and 412 days of mandatory supervision).

Defendant appeals. He did not obtain a certificate of probable cause.

---

[1] Undesignated statutory references are to the Vehicle Code.

2

ANALYSIS

We appointed counsel to represent defendant on appeal. Counsel filed an opening brief that sets forth the facts of the case and requests this court to review the record and determine whether there are any arguable issues on appeal. (*Wende, supra*, 25 Cal.3d 436.) Defendant was advised by counsel of the right to file a supplemental brief within 30 days of the date of filing of the opening brief.

Defendant filed a supplemental brief asserting the trial court's denial of his suppression motion was erroneous because he was subjected to an illegal traffic stop.

Defendant filed a suppression motion in the trial court asserting the initial traffic stop was without reasonable suspicion and therefore violated the Fourth Amendment. The trial court denied the motion.

"[A]n officer may stop and detain a motorist on reasonable suspicion that the driver has violated the law. [Citations.] The guiding principle in determining the propriety of an investigatory detention is 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.' [Citations.] In making our determination, we examine 'the totality of the circumstances' in each case. [Citations.]" (*People v. Wells* (2006) 38 Cal.4th 1078, 1082-1083.) An ordinary traffic stop is treated as a detention and is reasonable under the Fourth Amendment "only if the facts and circumstances known to the officer support at least a reasonable suspicion that the driver has violated the Vehicle Code or some other law. [Citations.]" (*People v. Miranda* (1993) 17 Cal.App.4th 917, 926.)

In *Navarette v. California* (2014) __ U.S. __, __ [188 L.Ed.2d 680, 687] (*Navarette*), there was an anonymous 911 tip that a driver of a specific pickup truck with a specific license plate number had run the anonymous caller off the highway at a specific location. Police responded within 18 minutes of the anonymous tip, spotted the truck near the location described by the caller, and followed the truck for about five minutes before pulling it over. (*Id*. at p. __ [188 L.Ed.2d at p. 685].) The responding

3

officers approached the truck and smelled marijuana.  (*Ibid*.)  The truck was searched and 30 pounds of marijuana were seized from the truck bed.  (*Ibid*.)

The Supreme Court found the anonymous tip was sufficiently reliable to credit the allegation the driver of the truck had attempted to run the caller off the highway and therefore justified an investigative stop.  (*Navarette, supra*, __ U.S. at p. __ [188 L.Ed.2d at p. 687].)  The court found the anonymous tip was reliable because the caller (1) "necessarily claimed eyewitness knowledge" of the dangerous driving, (2) must have known the truck was near the location where it was stopped, and (3) used the 911 system to report the incident and, in doing so, was presumably aware 911 calls are recorded and traceable, together making the tip more reliable than a "bare bones" tip.  (*Id*. at p. __ [188 L.Ed.2d at pp. 687-689].)

Acknowledging even a reliable tip will not justify an investigative stop unless there is some objective and particularized indicia of possible criminal activity, the *Navarette* court assessed whether the tip "created a reasonable suspicion of an ongoing crime such as drunk driving as opposed to an isolated episode of past recklessness. [Citation.]" (*Navarette, supra*, __ U.S. at p. __ [188 L.Ed.2d at p. 689].)  The court reasoned the specific and dangerous conduct reported by the anonymous caller bore "too great a resemblance to paradigmatic manifestations of drunk driving to be dismissed as an isolated example of reckless." (*Id*. at p. __ [188 L.Ed.2d at p. 690].)  It found the officers were not obligated to follow the pickup truck at length in order to personally observe suspicious driving and concluded the stop was lawful.  (*Id.* at p. __ [188 L.Ed.2d at pp. 690-691].)

Here, the call was not an untraceable anonymous tip.  Rather, the call came from someone at the inn where defendant was refused alcohol.  As in *Navarette, supra*, 188 L.Ed. 2d 680, the caller gave specific details regarding the car involved and related information supporting an inference someone was engaged in dangerous behavior, driving under the influence of alcohol.  Deputy Bellotti found the car not long after the

4

dispatch and was able to observe the car weaving inside the traffic lane supporting an inference the driver was intoxicated. Since the tip and Deputy Bellotti's observations provided reasonable suspicion the driver of defendant's car was intoxicated, the traffic stop was justified under *Navarette*.[2]

We do note an error in the abstract of judgment. The trial court awarded defendant 1,688 days of presentence credit, consisting of 638 actual days, 638 conduct credits, and 412 days of mandatory supervision.[3] The abstract correctly lists the 1,688 total days but shows only 638 days of actual and 638 days of conduct credits, omitting any reference to the 412 days of mandatory supervision. The abstract form provided by the Judicial Council does not contain a specific listing for presentence mandatory supervision time. However, since defendant is receiving credit for the actual time served, the mandatory supervision time should be entered into the actual time section of the conduct credits section, giving defendant 1,050 days of actual credit to go with the 638 days of conduct credit.

Having undertaken an examination of the entire record, we find no arguable error that would result in a disposition more favorable to defendant.

### DISPOSITION

The judgment is affirmed. The trial court is directed to prepare a corrected abstract of judgment reflecting defendant's credit for time spent on mandatory supervision, as specified in this opinion. The trial court is further directed to forward a

---

**2** Our conclusion that the stop was justified under *Navarette* based on the call and the officer's observation of defendant's car weaving in his lane obviates the need to determine whether defendant's crossing the double yellow line justified the stop. (See § 21460 [illegal to cross double yellow line, exception for turning left at an intersection].)

**3** A defendant is entitled to actual but not conduct credit for time served under mandatory supervision. (Pen. Code, § 1170, subd. (h)(5)(B).)

5

certified copy of the corrected abstract to the Department of Corrections and Rehabilitation.

        /s/        
HOCH, J.

We concur:

        /s/        
BLEASE, Acting P. J.

        /s/        
BUTZ, J.